UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

ANDREA J. NUSSINOW,

                              Plaintiff,

            - against -                                        1:19-cv-332 (FJS/CFH)

COUNTY OF COLUMBIA, RONALD PEREZ, as
President of the Columbia-Greene Humane Society, Inc.
and in his individual capacity, LEE DELISLE, as
Chief Investigator for the Columbia-Greene Humane
Society, Inc. and in his individual capacity, and
COLUMBIA-GREENE HUMANE SOCIETY, INC., doing
business as the Columbia-Greene Humane Society/SPCA,

                              Defendants.

-------------------------------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS
OF DEFENDANT COUNTY OF COLUMBIA**


MANSFIELD, GAUTIER & ROSENTHAL LLP
P.O. Box 3 (US Postal Service)
55 Old Post Road North (deliveries)
Red Hook, New York 12571
Telephone and Fax:  (845) 876-1086
Email:  rosenthal@mgrlawyer.com

Of Counsel:    Lisa Rosenthal, Esq.

## **TABLE OF CONTENTS**

Page

Preliminary Statement…………………………………………………………..1

Relevant Facts…………………..……………………………………………….3

  A. Background…………………………………………………………....3

  B. The County's Policy and/or Custom
     Regarding Animal Cruelty Complaints………………………………………3

  C. The SPCA's July 1, 2017
     Appearance at Plaintiff's Farm…………………………………………….....4

  D. The County Obtains a Search Warrant in
     Reliance on DeLisle's Misleading Affidavit…………..………………….......5

  E. Plaintiff's Arrest on July 4, 2017 and
     Subsequent Treatment……………………………………………………….6

  F. The County's Criminal Prosecution of Plaintiff…………………………….6

Argument…………………………………………………………………….8

I.  Plaintiff's Complaint Properly States a Claim Under
  42 U.S.C. § 1983 and, Therefore, the County's Motion
  to Dismiss Fails……..………………………….……………………….....8

  A. The County Misapplies the Applicable Legal Standard………………………8

  B. Plaintiff Has Plausibly Pleaded a Claim Against the
    County for Violation of Her Rights
    Under 42 U.S.C. § 1983……………..…………………………………….....11

II. The County is Not Immune From Suit ………………………….…………………20

  A. The Eleventh Amendment to the United States
    Constitution Has No Application to This Case……………………………20

  B. Common Law Immunity is Not
    Available to the County……………………………………………………21

Conclusion…………………………………………………………….....…..22

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

ANDREA J. NUSSINOW,

                         Plaintiff,

          - against -                                    1:19-cv-332 (FJS/CFH)

COUNTY OF COLUMBIA, RONALD PEREZ, as
President of the Columbia-Greene Humane Society, Inc.
and in his individual capacity, LEE DELISLE, as
Chief Investigator for the Columbia-Greene Humane
Society, Inc. and in his individual capacity, and
COLUMBIA-GREENE HUMANE SOCIETY, INC., doing
business as the Columbia-Greene Humane Society/SPCA,

                         Defendants.

------------------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS
## OF DEFENDANT COUNTY OF COLUMBIA

### Preliminary Statement

Plaintiff Andrea J. Nussinow submits this memorandum of law in opposition to

the motion of Defendant County of Columbia (the "County") for an order pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing Plaintiff's complaint

dated March 15, 2019 (the "Complaint") as against the County.[1]  As is discussed below,

Plaintiff has adequately pleaded her claims against the County, which has failed to offer

any basis for dismissing the claims against it.  Contrary to its assertions, Plaintiff has

adequately alleged that the County: (i) established a policy and/or custom of delegating

---

[1]      The remaining Defendants – the Columbia-Greene Humane Society, Inc. (the "SPCA"), Ronald Perez ("Perez") and Lee DeLisle ("DeLisle") – did not join in the County's motion and have answered the Complaint (*see* Document No. 14 in the Court's electronic docket for this case).

all responsibility for investigation of animal cruelty complaints under the New York Agriculture and Markets Law to the SPCA's "cruelty investigators"; (ii) as part of that policy and/or custom the County made no independent effort to assess or confirm the veracity of criminal referrals made by the SPCA and its "cruelty investigators"; and (iii) through the District Attorney as chief policymaker, knew or deliberately disregarded the likelihood that this policy and/or custom would to cause persons prosecuted by the District Attorney to be deprived of their Constitutional rights to liberty and property under the Fourth and Fourteenth Amendments to the United States Constitution.  Plaintiff has also pled adequately that, as a result of the application of this policy and/or custom, Plaintiff was deprived of her federal Constitutional liberty and property rights.

At this initial motion to dismiss stage, Plaintiff is required only to allege a plausible claim against the County, which she has done.  The County's suggestion that Plaintiff be required, in essence, to prove her case in the pleadings is not the law.  As a result, the claim against the County pursuant to 42 U.S.C. § 1983 should not be dismissed.

The County's further argument that it is entitled to immunity from this action under the Eleventh Amendment to the United States Constitution or under common law principles of absolute prosecutorial immunity is without merit.  Neither form of immunity is available to the County in this action.  The District Attorney is not a defendant in this action, in his official or personal capacity.  Despite its efforts to mischaracterize the allegations in the Complaint, the County is not entitled to the benefit of any immunities the District Attorney might in theory be able to assert if he were a party.  Accordingly, the County's motion to dismiss must be denied.

2

## RELEVANT FACTS

### A.      Background

The Complaint alleges that Plaintiff, the owner and operator of a horse farm in

Columbia County, New York, had rescued ten horses from a process whereby they were

sold at auction repeatedly and in danger of ending up in slaughter facilities (Complaint at

¶¶ 12-13, 24-25).  The rescued horses were in poor physical shape and severely

underweight upon their arrival at Plaintiff's farm, during the period from April through

June 2017 (*id.* at ¶ 25).  Plaintiff provided the horses with plentiful food and water while

they were in her care (*id.* at ¶ 25).

### B.      The County's Policy and/or Custom Regarding Animal Cruelty Complaints

The Complaint alleges that:

- "Upon information and belief, the County has a contractual or other legal relationship with the SPCA which entails, among other things, the use of the SPCA's personnel to investigate claims relating to the mistreatment of animals located within the geographic boundaries of the County."  Complaint at ¶ 19.

- "Upon information and belief, the District Attorney, as the chief policy-maker for the County, has adopted a policy and/or custom of delegating to the SPCA's 'cruelty investigators' the investigation of complaints that animals are being mistreated in violation of, among other things, the New York Agriculture & Markets Law."  *Id.* at ¶ 20.

- "Upon information and belief, the District Attorney, as the chief policy-maker for the County, has adopted as a policy and/or custom not to supervise the investigative actions of the SPCA's 'cruelty investigators' in connection with complaints regarding the alleged mistreatment of animals."  *Id.*

- "Upon information and belief, the SPCA refers matters that it contends violate such laws to the County's District Attorney for criminal prosecution."  *Id.* at ¶ 21.

- "Upon information and belief, the District Attorney, as the chief policy-maker for the County, has adopted as a policy and/or custom that when the District Attorney, on behalf of the County, receives a referral for criminal prosecution from the SPCA, the District Attorney does no independent investigation to determine whether the factual allegations made by the SPCA or its personnel are true or accurate."  *Id.* at ¶ 22.

- "Upon information and belief, the District Attorney, as the chief policy-maker for the County, has adopted a policy and/or custom to rely upon allegations made by the SPCA and its personnel when seeking search and arrest warrants in connection with the SPCA's referrals." *Id.*

- "Upon information and belief, the District Attorney, as the chief policy-maker of the County, adopted and maintained the foregoing policy and/or custom even though the District Attorney knew or deliberately disregarded the likelihood that the policy and/or custom would directly cause persons prosecuted as a result of the referrals by the SPCA or its personnel to be subjected to the unreasonable loss of their Constitutional rights to liberty and property." *Id.* at ¶ 23.

C.    **The SPCA's July 1, 2017 Appearance at Plaintiff's Farm**

The Complaint alleges that on July 1, 2017, Defendant DeLisle, accompanied by a New York State trooper, came onto Plaintiff's farm while Plaintiff was working there alone (Complaint at ¶¶ 28-29). DeLisle told Plaintiff that the SPCA had received a complaint about some "skinny" horses, questioned Plaintiff in a hostile manner, and then threatened Plaintiff with immediate arrest and physically intimidated her into signing a piece of paper that turned out to be a "Voluntary Consent to Search Certain Premises" (*id.* at ¶ 29). Plaintiff made repeated efforts to show DeLisle and the trooper documents substantiating her statements that the horses had come to her recently in their current (or worse) condition, but DeLisle refused to listen or to allow Plaintiff to show him such documents (*id.*). At the conclusion of their lengthy questioning and search of the farm, DeLisle announced to the trooper that he could "get" Plaintiff on numerous charges, but then left without informing Plaintiff what charges might be lodged, in what forum or what Plaintiff was expected to do to rectify the issues DeLisle claimed existed (*id.* at ¶ 32). The trooper reassured Plaintiff that she should continue to keep doing what she had been doing and suggested that if she did, there would be no further problem (*id.*).

The Complaint further alleges that between DeLisle's and the trooper's departure from Plaintiff's farm on July 1, 2017 and the morning of July 4, 2017, nobody from the

4

County contacted her, attempted to interview her, asked her to provide them with any information confirming her statements concerning the condition of the rescue horses, or attempted to remove the horses from Plaintiff's custody (Complaint at ¶ 34).

**D.     The County Obtains a Search Warrant in
        Reliance on DeLisle's Misleading Affidavit**

The Complaint alleges that on July 3, 2017, a prosecutor employed by the County applied for a search warrant for Plaintiff's farm (Complaint at ¶ 36).  The application relied upon an affidavit executed on July 1, 2017 by DeLisle, which failed to reveal information that would militate against a conclusion that Plaintiff had deprived any animals on her farm of necessary water or nutrition, including that (i) Plaintiff had not actually "voluntarily" agreed to the search of her farm but had signed the waiver form because DeLisle intimidated her and threatened to arrest her if she refused to sign (*id.* at ¶ 35); (ii) Plaintiff had attempted to show DeLisle and the trooper documents substantiating her statements about the condition of the horses when they came into her care, but that DeLisle had refused to allow her to do so (*id.*); and (iii) Plaintiff had explained that a pony that DeLisle claimed was emaciated was actually very elderly and that its condition was a reflection of its age, but that it was receiving adequate water, shelter and nutrition (*id.*).

The Complaint further alleges that "[u]pon information and belief, the prosecutor relied in whole or significant part upon DeLisle's sworn statement in applying for the search warrant.  Upon information and belief, the prosecutor did not inform the judge of the relevant information that DeLisle had omitted from his statement."  Complaint at ¶ 36.  The Complaint also alleges that "[u]pon information and belief, no person employed by the County, including the District Attorney and prosecutors in the District Attorney's

office, made any effort to confirm independently the truthfulness, accuracy or completeness of the allegations in DeLisle's statement." *Id.* at ¶ 38.

E.    **Plaintiff's Arrest on July 4, 2017 and Subsequent Treatment**

The Complaint alleges that on July 4, 2017, DeLisle reappeared at Plaintiff's farm, accompanied by Defendant Perez, other personnel from the SPCA, a veterinarian who turned out not to have expertise in the evaluation or treatment of large animals such as horses, and a New York State trooper (Complaint at ¶ 41).  The trooper gave Plaintiff a copy of the search warrant, and then the SPCA personnel and the veterinarian began to search the property, identifying horses and other animals for cursory examination, and photographing them (*id.* at ¶¶ 42-45).  Plaintiff, who had been interrupted by this intrusion while she was in the process of feeding the horses and other animals on the farm and refilling water buckets and troughs, tried to assist these persons to avoid having them frighten or injure the horses (*id.* at ¶¶ 42-43).  After cooperating fully with all demands made on her for two hours, Plaintiff was arrested, taken to the State Police barracks and incarcerated there for several hours before being released (*id.* at ¶¶ 44-47).

The Complaint further alleges that DeLisle and Perez made several further visits to the farm between July 7 and September 22, 2017, most of the time without producing a search warrant, during which they demanded that Plaintiff allow unrestricted searches, and made threats against Plaintiff (Complaint at ¶¶ 48-61).

F.    **The County's Criminal Prosecution of Plaintiff**

The Complaint alleges that:

• "The County, through its District Attorney, issued ten accusatory instruments against Plaintiff, each dated July 8, 2017", which charged Plaintiff with "failure to provide sustenance to animals pursuant to Section 353 of the New York

6

Agriculture & Markets Law, which were misdemeanor charges under New York law."  Complaint at ¶ 62.

- "The supporting materials attached to these accusatory instruments, on their face, did not support the charges in those instruments", because they failed to allege necessary elements of such charges based on non-hearsay evidence.  *Id.* at ¶ 63. As a result, "the accusatory instruments failed to establish probable cause for Plaintiff's prosecution."  *Id.* at ¶ 64.

- "Plaintiff's attorney attempted to persuade the County to withdraw the criminal proceeding against Plaintiff", *id.* at ¶ 65, but "[t]he County, via the District Attorney, rebuffed all of Plaintiff's attorney's overtures."  *Id.* at ¶ 66.

- "Upon information and belief, nobody associated with the County, including the District Attorney and prosecutors working on the prosecution of Plaintiff, sought to investigate the information provided to the County by Plaintiff's attorney to determine whether the County's delegation of complete responsibility for developing the evidence and charges against Plaintiff had resulted in the deprivation of Plaintiff's civil rights, or whether the SPCA, DeLisle or Perez bore any hostility toward Plaintiff that affected their recommendation of the prosecution."  *Id.* at ¶ 66.

- "Plaintiff moved before the Town Justice Court of the Town of Clermont to dismiss the accusatory instruments in the interest of justice.  Plaintiff showed in detail that the accusatory instruments were insufficient on their face to support the charges.  In addition, Plaintiff submitted documentary evidence refuting the County's claims that Plaintiff had failed to provide proper sustenance or necessary water to the identified animals."  *Id.* at ¶ 67.

- "On October 20, 2017, rather than respond to Plaintiff's motion to dismiss, the County's District Attorney served Plaintiff's attorney with notice that the County intended to present the misdemeanor charges in the accusatory instruments to a grand jury in Columbia County.  Upon information and belief, this was a very unusual course of action for the County to take in a misdemeanor prosecution. Upon information and belief, the County sought presentation to a grand jury in the belief that the town justice court was likely to grant Plaintiff's motion to dismiss the accusatory instruments, whereas a grand jury was more likely to indict Plaintiff."  *Id.* at ¶ 68.

- Perez and DeLisle testified in the grand jury in support of the County's presentation (Complaint at ¶ 70).  Plaintiff, testifying after the completion of the County's presentation, "denied that she had failed to provide proper sustenance and water to the animals identified in the accusatory instruments."  *Id.* at ¶ 71. Plaintiff proffered witnesses and an expert to support her testimony that "the animals that had been identified as thin, very thin or emaciated in several of the accusatory instruments were not in fact unhealthy as described by the County's veterinarian."  *Id.*

7

- "At the conclusion of the grand jury presentation, the grand jury refused to vote a true bill against Plaintiff on the charges offered by the County.  Plaintiff was discharged on December 19, 2017."  *Id.* at ¶ 72.

## ARGUMENT

### I.  PLAINTIFF'S COMPLAINT PROPERLY STATES A CLAIM UNDER 42 U.S.C. § 1983 AND, THEREFORE, THE COUNTY'S MOTION TO DISMISS FAILS

The County argues that the First Claim for Relief in the Complaint, arising under 42 U.S.C. § 1983, should be dismissed because Plaintiff has not adequately pled the existence of a municipal policy or custom to state a claim against the County.  The County is incorrect in its interpretation of the law.

### A.     The County Misapplies the Applicable Legal Standard

As the County correctly acknowledges (*see* the County's Memorandum of Law in support of its motion to dismiss dated May 15, 2019 ("County Mem.") at 3), motions to dismiss under Fed. R. Civ. P. 12(b)(6) require the Court to treat well-pleaded allegations in the Complaint as true, *see, e.g., Fahs Constr. Group, Inc. v. Gray*, 725 F.3d 289, 290 (2d Cir.), *cert. denied*, 571 U.S. 1111 (2013); *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008); *ATSI Comm's Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

A plaintiff's obligation is to plead claims that are "facially plausible" in order to survive dismissal under Fed. R. Civ. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations [citations omitted], a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)] (on a motion to dismiss, courts "are

> not bound to accept as true a legal conclusion couched as a
> factual allegation").

550 U.S. at 555-56.  The Court clarified that a plaintiff must plead a complaint "with

enough factual matter (taken as true) to suggest [that the violation of law occurred].

Asking for plausible grounds … *does not impose a probability requirement at the*

*pleading stage*; it simply calls for enough fact to raise a reasonable expectation that

discovery will reveal evidence" of the unlawful conduct complained of.  550 U.S. at 556

(emphasis added).[2]  "[A] well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of those facts is improbable …."  *Id.*

The meaning of the term "plausible claim for relief" has been a matter of judicial

debate.  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court elaborated, stating that "[a]

claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Court observed that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to warrant treating legal conclusions, as opposed to allegations

of fact, as true for purposes of a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  "Determining

whether a complaint states a plausible claim for relief will … be a context-specific task

---

[2]     The Supreme Court in *Twombly* further stated that "[f]actual allegations must be
enough to raise a right to relief above the speculative level [citation omitted], on the
assumption that all the allegations in the complaint are true (even if doubtful in fact)
[citations omitted]."  550 U.S. at 556 (internal quotation marks omitted), citing
*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *Nietzke v. Williams*, 490 U.S.
319, 327 (1989).  "Rule 12(b)(6) does not countenance … dismissals based on a judge's
disbelief of a complaint's factual allegations…."  *Nietzke*, 490 U.S. at 327.  *See also
Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed
even if it appears "that a recovery is very remote and unlikely"), overruled on other
grounds by *Davis v. Scherer*, 468 U.S. 183 (1984).

that requires the reviewing court to draw on its judicial experience and common sense [citation omitted]."  *Id.*

In interpreting how to apply the "plausible claim for relief" standard, the Second Circuit has made clear that "[t]he *Twombly* plausibility standard … does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant [citation omitted] or where the belief is based on factual information that makes the inference of culpability plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), quoting *Boykin v. KeyCorp.*, 521 F.3d 202, 215 (2d Cir. 2008), and citing *Iqbal*, 556 U.S. at 678. Moreover, the Second Circuit rejected the position that *Twombly* and *Iqbal* "require the pleading of specific evidence or extra facts beyond what is needed to make a claim plausible."  *Arista Records*, 604 F.3d at 120-21.[3]

---

[3]     It is surprisingly difficult to find cases that examine the factual allegations of a complaint in sufficient detail to decide why a particular claim does or does not meet the plausibility standard.  In *Jackson v. Wal-Mart Stores, Inc.*, 753 Fed. Appx. 866 (11th Cir. 2018), the Eleventh Circuit engaged in this process, finding through painstaking sifting of the allegations of the complaint that the plaintiff had stated a plausible claim that he was injured by a gas container that his late father allegedly purchased from Wal-Mart.  The court rejected Wal-Mart's argument that the plaintiff had failed to establish to a certainty that the container was purchased from Wal-Mart and not another source, holding that "*Iqbal* does not require a plaintiff to produce evidence supporting a complaint's factual allegations before we assume their truth.  To the contrary, *Iqbal* tells us we must assume the truth of all well-pleaded allegations except legal conclusions regardless of whether evidence may ultimately support them….  The facts Jackson pled are not 'mere conclusory statements' reciting the elements of a cause of action, but rather well-pleaded factual allegations we must assume true at this stage.  Ultimately, Jackson may not be able to prove his father purchased the gas container from Wal-Mart.  However, that is not the proper inquiry at this stage.  Now it is only relevant whether Jackson's complaint plausibly supports the inference he did [citation omitted]."  753 Fed. Appx. at 869, citing *Iqbal*, 556 U.S. at 678, 679.

The County does not meet its burden to prevail on a motion to dismiss by simply declaring that the Complaint's allegations are conclusory, while ignoring the wealth of facts alleged to support the legal conclusions.[4]

**B.      Plaintiff Has Plausibly Pleaded a Claim Against the County for Violation of Her Rights Under 42 U.S.C. § 1983**

The County makes little effort to show how and why the Complaint fails plausibly to state a claim for relief, simply stating as a conclusion that Plaintiff's Section 1983 claim against it is "based entirely on conclusory statements unsupported by any factual allegations." County Mem. at 5. The County argues that Plaintiff has not alleged a proper claim that the County established a policy as set forth at Paragraphs 19-23 of the Complaint (*see* pp. 3-4 above), *id.* The County argues that Plaintiff's claim is "based entirely on conclusory statements unsupported by any factual allegations." *Id.*

This argument is incorrect factually and legally. Factually, it is incorrect because, as set forth in detail above (at pp. 3-6), Plaintiff did not merely allege that there was a

---

[4]     In *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp.2d 777 (N.D. Ohio 2011), the Northern District of Ohio rejected the defendants' characterization of every allegation in the complaint that stated specific facts – when those paragraphs also alleged ultimate legal conclusions that they claimed flowed from those facts – as "conclusory" and therefore not entitled to be accepted as true. "Defendants' gloss on the plausibility pleading standard thus dooms *any* Complaint paragraph containing a term that, by itself, constitutes a legal conclusion, regardless of any factual support that may exist for that allegation anywhere in the Complaint. However, even in its most expansive reading, *Twombly* does not support such exacting dissection of a complaint. Instead, discussing the conclusory/non-conclusory divide, *Twombly* and *Iqbal* define as conclusory 'bare assertions' of liability [citations omitted] and 'threadbare' legal statements as being denied a presumption of truth [citation omitted], but *not* allegations that contain factual support. By contrast, Defendants strike allegations containing *any* assertions of their antitrust liability, and thus strike all legal conclusions regardless of whether such allegations serve as a framework for the Complaints as permitted by *Iqbal*, or are supported by factual allegations." 799 F. Supp.2d at 791-93. The County has not even bothered to identify what parts of the allegedly impermissibly conclusory paragraphs are conclusory, much less shown why it believes them to be so. This is simply inadequate to support a motion to dismiss.

policy and as a result she was harmed.  Rather, Plaintiff alleged the specifics of the

alleged policy or custom (Complaint at ¶¶ 19-23), and facts concerning the County's

application of the policy or custom to her situation (*see id.* at ¶¶ 34-36, 38, 66, 68, 70-72).

As was stated in *Jackson v. Wal-Mart Stores, Inc.*, 753 Fed. Appx. at 869, *Iqbal* requires

the motion court to accept all well-pleaded allegations of fact as true, and may only deny

such a presumption of truth to "threadbare" legal conclusions.  The County cannot

transform well-pleaded allegations of fact into threadbare legal conclusions merely by

saying that they are.[5]

The County's argument regarding the alleged lack of plausibility of Plaintiff's

claim (*see* County Mem. at 4-5) is also wrong as a matter of law.  Under *Monell v. Dept.

of Social Servs.*, 436 U.S. 658 (1978),

> [l]ocal governing bodies … can be sued directly under §
> 1983 for monetary, declaratory, or injunctive relief where,
> as here, the action that is alleged to be unconstitutional
> implements or executes a policy statement, ordinance,
> regulation, or decision officially adopted and promulgated
> by that body's officers.  Moreover, although the touchstone
> of the § 1983 action against a government body is an
> allegation that official policy is responsible for a
> deprivation of rights protected by the Constitution, local
> governments, like every other § 1983 'person,' by the terms
> of the statute may be sued for constitutional deprivations

---

[5]     Plaintiff infers that the County considers her allegations concerning the County's
policy or custom to be "conclusory" because Plaintiff has not presented evidentiary facts
that establish conclusively the existence of the alleged policy or custom, *see* County
Mem. at 5-6.  As discussed above, however, Plaintiff is not required at the pleading stage
to show evidentiary facts in order to allege a plausible claim of the existence of the policy
or custom, *see Arista Records LLC v. Doe 3*, 604 F.3d at 120-21.  To the extent that the
County is claiming that the allegations of the existence of the policy or custom are
conclusory because they were alleged upon information and belief, that too does not
debar the allegations from meeting the plausibility standard, especially where, as here,
the information concerning the existence of the policy or custom at issue is "peculiarly
within the possession and control of the defendant" and Plaintiff's "belief is based on
factual information that makes the inference of culpability plausible."  *Id.* at 120.

> visited pursuant to governmental 'custom' even though
> such a custom has not received formal approval through the
> body's official decisionmaking channels.

436 U.S. at 690-91.  The Court further noted that

> when execution of a government's policy or custom,
> whether made by its lawmakers or by those whose edicts or
> acts may fairly be said to represent official policy, inflicts
> the injury that the government as an entity is responsible
> under § 1983.

*Id.* at 694.

Official acts of the municipality itself, or policies or customs set by the

municipality's chief decisionmaker, will form a basis for *Monell* liability.  *See, e.g.,*

*Myers v. County of Orange*, 157 F.3d 66, 76 (2d Cir. 1998), *cert. denied*, 525 U.S. 1146

(1999) ("[a]s a municipal corporation, Orange County can be held liable under 42 U.S.C.

§ 1983 only for the actions of its own policymakers").  District Attorneys are generally

considered to be the chief policymakers for the counties in which they are elected and

serve, for purposes of administrative or other non-prosecutorial functions of their offices.

*See, e.g., Pinaud v. County of Suffolk*, 52 F.3d 1139, 1153-54 n.14 (2d Cir. 1995) ("as

long as a plaintiff's 'claims center [] not on decisions whether or not, or on what charges,

to prosecute but rather on the administration of the district attorney's office,' [citation

omitted] there can be liability [under Section 1983] against a New York county for an

alleged malicious prosecution", quoting *Gan v. City of N.Y.*, 996 F.2d 522, 536 (2d Cir.

1993)).  *See also Walker v. City of N.Y.*, 974 F.2d 293, 301 (2d Cir. 1992), *cert. denied*,

507 U.S. 961 (1993) ("[w]here a district attorney acts as the manager of the district

attorney's office, the district attorney acts as a county policymaker").

Here, Plaintiff has plausibly alleged the necessary elements of a *Monell* claim: the existence of a policy or custom of the municipality, put into place by the municipality's chief policymaker (the District Attorney), the application of which caused a violation of Plaintiff's rights under the United States Constitution.  Plaintiff alleged that "on or about July 3, 2017, a prosecutor employed by the County's District Attorney's office applied to a Town Justice for the Town of Clermont in the County of Columbia, for a search warrant for Plaintiff's farm.  Upon information and belief, the prosecutor: (i) relied in whole or significant part upon DeLisle's sworn statement in applying for the search warrant; and (ii) did not inform the judge of the relevant information that DeLisle had omitted from his statement."  Complaint at ¶ 36.  The omitted information was that: (i) DeLisle had procured Plaintiff's "written consent" to search her property by threatening her with immediate arrest if she did not comply with his demand that she sign the consent; (ii) Plaintiff had explained to DeLisle that the rescue horses had come into her possession in poor physical condition and had offered to show DeLisle documents substantiating her claims but DeLisle had refused to allow her to do so; and (iii) as to an elderly pony that DeLisle had alleged was in "extremely emaciated condition," Plaintiff explained that the animal's appearance was due to its age but that it was receiving adequate food, water and shelter.  *Id.* at ¶ 35.  These facts give support to the existence of a policy or custom under which the County delegated its investigative authority to the SPCA and its personnel – knowingly or deliberately indifferent to the likelihood of Constitution violations arising from the application against Plaintiff of the policy or custom – and made no effort to exercise its independent prosecutorial discretion.  This is

sufficient to allege a plausible claim for the existence of the alleged policy or custom.[6]
Contrary to the County's suggestion, Plaintiff is not required to do any more to overcome
her pleading burden.[7]

The County is also wrong in suggesting that Plaintiff has failed to state a
cognizable claim for municipal liability (*see* County Mem. at 4). The First Claim for
Relief, alleged under 42 U.S.C. § 1983, is analogous to a common-law claim for
malicious prosecution under New York law (*see* Complaint at ¶¶ 84-95). In a pair of
recent decisions, the Supreme Court has instructed the federal courts considering Section
1983 claims not to be over-concerned with labels but, rather, to seek to analogize such
claims to their nearest equivalent under applicable state tort law. *See Manuel v. City of
Joliet*, ___ U.S. ___, 137 S. Ct. 911, 921 (2017) (in the context of accrual of claims,
holding that "[c]ommon-law principles are meant to guide rather than to control the
definition of § 1983 claims, serving 'more as a source of inspired examples than of

---

[6]      The County's reliance on *Hicks v. City of Syracuse*, Docket No. 5:17-CV-0475,
2018 WL 6308653 (N.D.N.Y. Dec. 3, 2018), *see* County Mem. at 5, is not well founded.
In that case, the plaintiff alleged the existence of a policy of the Syracuse police
department to tolerate the use of excessive force against members of the African
American community, alleging that there were frequent instances of racially motivated
misconduct by Syracuse police officers against such persons. The plaintiff failed to
allege that the policy, if it existed, was related temporally to or was the motivating force
for the alleged misconduct. Under those circumstances, the court stated that the
allegations concerning the policy were conclusory and dismissed the claim with leave to
replead. The facts before this Court are very different: Plaintiff alleges a causal link
between the existence of the policy or custom and the malicious prosecution to which she
was subjected, *see* Complaint at ¶¶ 19-23, 35-38, 84-94. *Hicks* is simply inapposite.

[7]      Interestingly, the County's argument is entirely focused on Plaintiff's supposed
failure to plausibly allege the existence of a County policy (*see* County Mem. at 5-6).
Not once does the County even acknowledge that Plaintiff has also alleged that the
Section 1983 violation may be founded on the existence of a "government 'custom,'"
*Monell*, 436 U.S. at 691. The Court should keep the distinction between an official
policy of the County and a widespread custom which, though not formalized,
nevertheless sets forth the County's practice with respect to the violative conduct.

prefabricated components.'"  137 S. Ct. 921, quoting *Hartman v. Moore*, 547 U.S. 250, 258 (2006).  *Accord, McDonough v. Smith*, ___ U.S. ___, 139 S. Ct. 2149, 2156 (2019).[8]

For Section 1983 claims that are analogous to common-law malicious prosecution claims, courts are required by 42 U.S.C. § 1988 to turn to state law.  *Conway v. Village of Mt. Kisco*, 750 F.2d 205, 214 (2d Cir. 1984); *Conte v. Co. of Nassau*, Docket No. 06-CV-4746, 2010 WL 3924677, at *15 (E.D.N.Y. Sept. 30, 2010); *Alicea v. City of N.Y.*, Docket No. 04 Civ. 1243, 2005 WL 3071274, at *6 (S.D.N.Y. Nov. 15, 2005).  In New York, the elements of a malicious prosecution claim are: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.  *Conway*, 750 F.2d at 214; *Conte*, 2010 WL 3924677, at *15.

In addition to the state law elements of malicious prosecution, "there must be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment."  *Washington v. Co. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004), quoting *Singer v. Fulton Co. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996).  "[A]n unreasonable seizure by a state actor in violation of the Fourth Amendment may be pursued in a suit brought under § 1983.  [Citation omitted.]  Further, since the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under §

---

[8]     *McDonough* overturned a decision originating in this district, which dismissed a complaint based on the premise that the complaint alleged a fabricated evidence claim which the district court held was untimely.  The Supreme Court, analogizing the claim to a malicious prosecution claim that could not have accrued until the criminal proceeding against the plaintiff had terminated in his favor, reversed.  139 S. Ct. at 2154.

1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998), citing *Brower v. Co. of Inyo*, 489 U.S. 593, 596 (1989).

Plaintiff has alleged the element of a seizure or other perversion of proper legal procedures implicating her liberty and privacy interests under the Fourth Amendment. Plaintiff alleges that she was seized by the County in violation of her Fourth Amendment liberty rights when she was arrested on July 4, 2017 under circumstances where probable cause to prosecute was lacking, *see* Complaint at ¶¶ 40-47, 62-64, 94. The County, through its District Attorney, continued the prosecution until December 19, 2017, when Plaintiff was discharged after the grand jury refused to vote a true bill, *see id.* at ¶¶ 62, 65-66, 68, 70-72, 94. The allegations of fact in these paragraphs of the Complaint plausibly allege this element of a Section 1983 malicious prosecution claim. The County does not explicitly argue otherwise.

Plaintiff also has plausibly alleged the elements of a New York malicious prosecution claim. She alleged that: (1) the County commenced and continued the criminal proceeding against her (Complaint at ¶¶ 62, 66, 68, 70, 90); (2) the criminal proceeding was terminated in her favor (*id.* at ¶¶ 72, 92); (3) the County lacked probable cause to commence the proceeding (*id.* at ¶¶ 63-64, 91); and (4) facts giving rise to an inference that the County commenced and continued the prosecution with actual malice (*id.* at ¶¶ 65-68, 93).[9] The County does not even bother to challenge the sufficiency of Plaintiff's showing as to these elements of a common-law malicious prosecution claim.

---

[9]     Under New York law, a plaintiff may establish the element of actual malice through "inferences to be drawn from the surrounding facts and circumstances." *Martin v. City of Albany*, 42 N.Y.2d 13, 17, 396 N.Y.S.2d 612 (N.Y. 1977). In cases such as the

The County also argues that the policy or custom did not, in fact, have any bearing on the SPCA's referral of the criminal charges here, because the SPCA's "cruelty investigators" had independent legal authority as peace officers under N.Y. Criminal Procedure Law §§ 2.10(7) and 150.20, and under N.Y. Agriculture & Markets Law § 371, to "issue an appearance ticket pursuant to Section 150.20 of the criminal procedure law, summon or arrest, and bring before a court or magistrate having jurisdiction, any person offending against any of the provisions of article 26 of the Agriculture and Markets Law."  County Mem. at 6, quoting N.Y. Ag. & Mkts. L. § 371.  The County argues that:

> There is no provision in the Agriculture and Markets Law or the Criminal Procedure Law, and no statute or case law cited in the plaintiff's Complaint, which mandates that the SPCA Peace Officers or agents report to, or be subservient to, the County or the District Attorney.  In fact, there is no reference at all to County government within the above-referenced State statutes.

County Mem. at 6.

None of this supports the County's position that the policy or custom alleged in the Complaint is "some completely made-up delegation of authority from a County or a DA, as plaintiff implausibly suggests."  The fact that the SPCA's personnel could initiate certain kinds of legal actions pursuant to independent statutory authority is not inconsistent with the existence of the alleged policy or custom, nor does it negate the facts that Plaintiff has alleged in support of the existence of the policy or custom.

---

one before this Court, where the prosecutor and the defendant/plaintiff are strangers to one another, a showing of lack of probable cause to commence and continue the prosecution may be offered to show that the prosecutor lacked belief in the guilt of the accused and, therefore, brought the proceeding for an improper purpose. *Id.*  Clearly, Plaintiff has plausibly alleged this element.

To the contrary, the facts alleged in the Complaint militate *against* the SPCA's personnel acting independently in initiating legal action.  The SPCA did not issue an appearance ticket to Plaintiff.  The SPCA did not summon Plaintiff to appear in court.  The SPCA did not bring Plaintiff before a magistrate.  Under the Agriculture and Markets Law, the SPCA's personnel could have taken any of these steps independently of the County's District Attorney.  Instead, the SPCA, after causing Plaintiff to be searched in violation of her Fourth Amendment rights and to be arrested, referred its complaints against Plaintiff to the District Attorney, which initiated and continued a criminal prosecution against her for over five months, *see* Complaint at ¶¶ 29-32, 35-38, 40-47, 62-72.

As discussed above, Plaintiff is not required to prove her case at the pleading stage, she simply must allege a facially plausible claim.  Proof of the existence of the alleged policy or custom is premature at this stage of the litigation, *see, e.g., McCrary v. Co. of Nassau*, 493 F. Supp.2d 581, 590 (E.D.N.Y. 2007) (arguments that plaintiff did not offer evidence to support allegations against county "are more appropriately made in a motion for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, can be examined to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law").  *See also Rosenfeld v. Lenich*, 370 F. Supp.3d 335, 355 (E.D.N.Y. 2019) ("none of these [summary judgment] cases mandate dismissal in a situation like the one here, where, at the motion to dismiss stage, the plaintiff has sufficiently alleged that the defendant had final policymaking authority

in the relevant area"); *Canner v. City of Long Beach*, Docket No. 12-cv-2611, 2015 WL 4926014, at *7 (E.D.N.Y. Aug. 18, 2015) (same).[10]

In light of the above, Plaintiff has alleged a plausible claim under 42 U.S.C. § 1983 against the County.  The branch of the County's motion asking the Court to dismiss the First Claim for Relief should, therefore, be denied.

## II. THE COUNTY IS NOT IMMUNE FROM SUIT

The County argues that it is immune from suit by Plaintiff under the Eleventh Amendment to the United States Constitution, and under common law principles of absolute immunity.  For the reasons that follow, the County is wrong.

**A.    The Eleventh Amendment to the United States
       Constitution Has No Application to This Case**

Under the Eleventh Amendment to the Constitution, a state is not subject to a damages action brought by a private plaintiff in federal court.  *See Gan v. City of N.Y.*, 996 F.2d at 529; *Woodward v. Office of Dist. Atty.*, 689 F. Supp.2d 655, 659 (S.D.N.Y. 2010); *LoPorto v. Co. of Rensselaer*, Docket No. 1:15-CV-0866, 2018 WL 4565768, at *6 (N.D.N.Y. Sept. 24, 2018).  The office of a district attorney, acting in its prosecutorial capacity, is entitled to assert Eleventh Amendment immunity, as are district attorneys

---

[10]    *Fabrikant v. French*, 691 F.3d 193 (2d Cir. 2012), upon which the County relies (*see* County Mem. at 6), is not to the contrary.  In that case, the court held that the spaying and neutering of dogs seized by the Ulster County Society for the Prevention of Cruelty to Animals constituted state action by the society even though those activities were not specifically identified in the New York Agriculture and Markets Law as being among the powers of peace officers affiliated with such a society.  691 F.3d at 208.  The proposition for which the County cites this case – that "when the SPCA acts under the Agriculture and Markets Law, it is acting with the authority and power of New York State", County Mem. at 6 – does not appear in the case and does not represent a fair paraphrase of the matter cited.

sued in their official capacity.  *Gan*, 996 F.2d at 529; *LoPorto*, 2018 WL 4565768, at *6-7.

The County argues that "[a] liberal reading of the Complaint suggests that plaintiff seeks to hold the County vicariously liable for the acts of the Columbia County District Attorney taken during the prosecution of plaintiff."  County Mem. at 7.  It would take a very "liberal" reading indeed to read in a claim by Plaintiff against the District Attorney in his official capacity.  Simply put, Plaintiff has not sued the Columbia County District Attorney, in his official or personal capacity.  As discussed above, Plaintiff alleged a claim under 42 U.S.C. § 1983 premised upon the Fourth Amendment violation to which Plaintiff was subjected as a result of the existence and application of the County's policy or custom, which policy or custom was adopted by the District Attorney as the chief policymaker for the County.  This is not a claim against the District Attorney or his office.  Thus, Eleventh Amendment immunity is inapplicable and the County has no right to claim such immunity.

**B.**     **Common Law Immunity is Not Available to the County**

The County asserts that "[t]o the extent plaintiff purports to hold the County liable for acts taken by the District Attorney in his individual capacity, the same should be dismissed as such acts are protected by the doctrine of absolute prosecutorial immunity."  County Mem. at 8.  The short answer is that neither absolute nor qualified immunity is available to a municipality such as a county.  "[U]nlike various government officials, municipalities do not enjoy immunity from suit – either absolute or qualified – under § 1983."  *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).  *Accord, Pinaud v. Co. of Suffolk*, 52 F.3d at 1153.  Again, Plaintiff has

21

not asserted any claims against the District Attorney, nor has she sought to hold the County vicariously liable for the District Attorney's actions.  Consequently, no immunity from suit is available to the County.  The motion to dismiss must be denied on these grounds as well.[11]

<strong><u>CONCLUSION</u></strong>

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny the County's motion to dismiss in its entirety.

Dated:        Red Hook, New York
              July 16, 2019

                              Respectfully Submitted,

                              **s/ Lisa Rosenthal**
                              Lisa Rosenthal, Bar Number: 700844
                              *Attorneys for Plaintiff*
                              MANSFIELD, GAUTIER & ROSENTHAL LLP
                              P.O. Box 3 (US Postal Service)
                              55 Old Post Road North (deliveries)
                              Red Hook, New York 12571
                              Telephone and Fax:  (845) 876-1086
                              Email:  rosenthal@mgrlawyer.com

---

[11]       Plaintiff notes that, although the caption for the County's Argument Point II makes reference to Plaintiff's supposed failure to state a supplemental state claim for malicious prosecution, the County does not in fact make any such argument in its Memorandum of Law.  Accordingly, Plaintiff has not addressed this non-existent argument.  Having abandoned the point, the County should not be permitted to argue it in its reply papers.  If, nevertheless, the County does attempt to make such an argument for the first time in reply, Plaintiff respectfully requests the opportunity to submit a response thereto.