**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

ANDREA J. NUSSINOW,

                              **Plaintiff,**

                    **v.**                                                1:19-CV-332
                                                                                   (FJS/CFH)

**COUNTY OF COLUMBIA;
RONALD PEREZ,** *as President of the
Columbia-Greene Humane Society, Inc. and
in his individual capacity*; **LEE DELISLE,**
*as Chief Investigator for the Columbia-Greene
Humane Society, Inc. and in his individual
capacity*; **and COLUMBIA-GREENE
HUMANE SOCIETY, INC.,** *doing business
as the Columbia-Greene Humane Society/SPCA*,

                              **Defendants.**

_____

**APPEARANCES**                                  **OF COUNSEL**

**MANSFIELD, GAUTIER &**              **LISA ROSENTHAL, ESQ.**
**ROSENTHAL LLP**
55 Old Post Road North
Red Hook, New York 12571
Attorneys for Plaintiff

**MURPHY BURNS LLP**                   **THOMAS K. MURPHY, ESQ.**
407 Albany Shaker Road                  **STEPHEN M. GROUDINE, ESQ.**
Loudonville, New York 12211
Attorneys for Defendant
County of Columbia

**MIRANDA SAMBURSKY**  **RICHARD S. SKLARIN, ESQ.**
**SLONE SKLARIN**
**VERVENIOTIS LLP**
570 Taxter Road
Suite 561
Elmsford, New York 10523
Attorneys for Defendants
Ronald Perez, Lee DeLisle,
and Columbia-Greene Humane
Society, Inc.

**SCULLIN, Senior Judge**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Andrea Nussinow ("Plaintiff") commenced this action against the County of Columbia ("Defendant County"), the Columbia-Greene Humane Society, Inc. ("Defendant SPCA"), Defendant Perez (President of Defendant SPCA), and Defendant DeLisle (Chief Investigator for Defendant SPCA) seeking compensatory damages, punitive damages, and attorney's fees for alleged violations of her civil rights. *See generally* Dkt. No. 1. Defendant County has moved to dismiss Plaintiff's claims against it for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] *See generally* Dkt. No. 12.

## II. BACKGROUND

Plaintiff contends that, for more than forty years, she has cared for, evaluated, trained, and traded horses, including as a certified equine appraiser, a trainer, a riding instructor, and a

---

[1] The remaining Defendants did not move for dismissal of this action.

breeder of race, jumping, and dressage horses. *See* Dkt. No. 1 at ¶ 5.[2] Plaintiff alleges that, in the spring of 2017, she began rescuing horses that had been caught up in a process whereby they were sold at auction repeatedly, often ending up at slaughter facilities. *See id.* at ¶ 24. Plaintiff asserts that many of the horses were old and sick, and most of them were in poor physical condition. *See id.* According to Plaintiff, from April 2017 until June 2017, she rescued approximately ten horses, all of which were in very poor physical shape, underweight for their size, had poor muscle and skin tone, and overall showed evidence of severe neglect, which is characteristic of horses caught up in the slaughter auction process. *See id.* at ¶ 25.

Plaintiff alleges that, at approximately 10:15 a.m. on July 1, 2017, a New York State Trooper and Defendant DeLisle arrived at her farm, telling her they had received a complaint about some "skinny" horses, and they wanted to search her premises. *See id.* at ¶ 29. Plaintiff alleges that she explained that she had rescued several horses from slaughter auctions, and she offered several times to show the men the documents she received when she acquired the rescue horses to confirm when and how she had obtained them and their condition. *See id.* Plaintiff alleges that Defendant DeLisle refused to listen to her or allow her to get the documentation, and he "began to question Plaintiff in an angry and aggressive tone." *See id.*

Plaintiff next alleges that Defendant DeLisle "thrust a piece of paper under [her] nose and insisted that she sign it." *See id.* According to Plaintiff, when she asked to read the paper, Defendant DeLisle became angry, shouted at her, and threatened to arrest her if she did not sign it. *See id.* Plaintiff alleges that she signed the paper, which turned out to be a consent form to search her premises, without having been permitted to read it first. *See id.* Defendant DeLisle

---

[2] Since this is a motion to dismiss, the Court has drawn the facts from the allegations in Plaintiff's complaint and has assumed the truth of those allegations for the purposes of this motion.

and the trooper then began to walk toward the paddock where the rescue horses were kept and later asked to see the barns where all of the other animals on the farm were located. *See id.* at ¶¶ 30-31. Plaintiff alleges that, at one point, Defendant DeLisle asked her about an elderly pony, stating that it looked thin; Plaintiff told him that the pony was very old, she could not keep weight on him, but he had adequate food, water, and shelter. *See id.* at ¶ 31.

According to Plaintiff's complaint, after their encounter on July 1, 2017, Defendant DeLisle made a statement under oath in his capacity as "Chief Investigator" for Defendant SPCA stating that he entered Plaintiff's farm with her signed, written consent and he noticed "at least three horses to be in very thin, and poor condition." *See id.* at ¶ 35. Plaintiff alleges that Defendant DeLisle did not disclose that she had explained that the rescue horses came into her possession in poor physical condition, that he refused to see her documentation about the rescue horses, or how he procured her signature. *See id.*

Upon information and belief, Plaintiff alleges that on July 3, 2017, a prosecutor working for Defendant County's District Attorney's office applied to a Town Justice for a search warrant for Plaintiff's farm, relying on Defendant DeLisle's statement and without notifying the Town Justice of Defendant DeLisle's omissions. *See id.* at ¶ 36. The next day, July 4, 2017, Plaintiff alleges that she was working on the farm when a New York State Trooper, Defendant DeLisle, Defendant Perez, and a veterinarian working with Defendant SPCA arrived at her farm with the search warrant. *See id.* at ¶ 41. Plaintiff contends that she showed Defendants DeLisle and Perez everything they wanted to see. *See id.* at ¶ 43. Plaintiff alleges that, after they searched the premises, Defendants DeLisle, Perez, and the trooper gathered away from her; and, shortly thereafter, the trooper approached her and announced that she was under arrest. *See id.* at ¶ 46. Plaintiff was taken to the New York State Police barracks, and she was not released for several

hours. *See id.* at ¶ 47. Defendants DeLisle and Perez allegedly returned to the farm at least four more times after Plaintiff's arrest, between July and September 2017. *See id.* at ¶¶ 48-61.

Plaintiff further alleges that Defendant County, through its District Attorney, issued ten accusatory instruments against Plaintiff, each dated July 8, 2017. *See id.* at ¶ 62. According to Plaintiff, these instruments charged her with failure to provide sustenance to animals pursuant to Section 353 of the New York Agriculture & Markets Law, which were all misdemeanor charges. *See id.* Specifically, the instruments charged that Plaintiff had failed to provide (i) water to nine horses and a donkey in the paddock where the rescue horses were kept on July 1, 2017, (ii) "proper sustenance" for eight horses on July 4, 2017, and (iii) water for approximately seven horses and three foals in stalls in one of the barns on July 4, 2017. *See id.*

Although Plaintiff's attorney allegedly attempted to get the District Attorney to drop the charges, she alleges that Defendant County's District Attorney ultimately presented the misdemeanor charges in the accusatory instruments to a grand jury. *See id.* at ¶¶ 65-68. Plaintiff claims that, upon information and belief, Defendants DeLisle and Perez testified before the grand jury. *See id.* at ¶ 70. Plaintiff also alleges that she testified before the grand jury, in which she denied that she had failed to provide proper sustenance, proffered witnesses— including vendors and clients—to testify that she had provided adequate food and water to animals on the farm, and proffered an equine veterinarian's testimony that the animals that had been identified as thin or emaciated were not, in fact, unhealthy. *See id.* at ¶ 71. The grand jury refused to vote a true bill against Plaintiff on the charges; and, as a result, Plaintiff asserts that she was discharged on December 19, 2017. *See id.* at ¶ 72. Finally, Plaintiff alleges that three months after she was discharged, Defendant Perez again entered her farm accompanied by a New York State Trooper. *See id.* at ¶ 74.

As a result of the above-alleged facts, Plaintiff claims that she suffered out-of-pocket losses resulting from the criminal prosecution, loss of business, loss of future income and business opportunities, reputational harm, and emotional harm. *See id.* at ¶¶ 76-81. Plaintiff filed her complaint in this action on March 15, 2019, alleging seven causes of action in total, two of which were against Defendant County. *See generally id.* Plaintiff's first cause of action alleged a municipal liability claim against Defendant County pursuant to 42 U.S.C. § 1983, claiming that Defendant County, through its District Attorney as a chief policymaker, (1) had a custom, policy, or practice of delegating investigations and the discretion to prosecute animal cruelty crimes to Defendant SPCA, and (2) maliciously prosecuted Plaintiff because of that policy or custom. *See id.* at ¶¶ 83-96. In Plaintiff's second cause of action, she alleged a claim for malicious prosecution against Defendant County pursuant to New York common law. *See id.* at ¶¶ 97-104.

## III. DISCUSSION

### A. Legal standard

A motion to dismiss pursuant to Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] …" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). When making its decision, this court must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 235 (2d Cir. 2008) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam)).

**B. Plaintiff's malicious prosecution claims**

In her complaint, Plaintiff asserts claims against Defendant County for malicious prosecution pursuant to both 42 U.S.C. § 1983 and New York common law. *See generally* Dkt. No. 1 at ¶¶ 83-104. Before considering whether Defendant County is liable under either of these statutes, the Court must first determine whether Plaintiff alleged facts to support her claims that Defendant County maliciously prosecuted her.

"The elements of malicious prosecution under § 1983 and New York law are the same." *Sherman v. Holecek*, No. 3:16-cv-1342 (BKS/DEP), 2018 U.S. Dist. LEXIS 147154, *8 (N.D.N.Y. Aug. 29, 2018) (citing *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994)). "A malicious prosecution claim requires a Plaintiff to allege: '(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the

proceeding was instituted with malice.'" *Id.* at *8-*9 (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)).

In addition, "[w]hen raising a malicious prosecution claim under Section 1983, a plaintiff must also show a 'seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.'" *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (internal quotation marks and citation omitted)). Furthermore, because the "gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1977), *cert. denied*, 522 U.S. 1115 (1998).

Here, Plaintiff alleges that Defendant County, through its District Attorney (the "DA"), commenced and continued a criminal proceeding against her when it issued ten accusatory instruments, each dated July 8, 2017, charging her with failure to provide sustenance to animals pursuant to Section 353 of the New York Agriculture & Markets Law. *See* Dkt. No. 1 at ¶ 62. Plaintiff also alleges that her attorney attempted to persuade Defendant County to withdraw the criminal proceeding, explained that the animals in question were not malnourished, and requested that the prosecutor meet with him to resolve the prosecution in a fair manner that would not cause Plaintiff continuing harm. *See id.* at ¶ 65. Plaintiff asserts that Defendant County, through the DA, rebuffed Plaintiff's attorney's overtures. *See id.* at ¶ 66. Plaintiff additionally contends that, after her attorney moved the Town Justice Court of the Town of Clermont to dismiss the accusatory instrument, Defendant County's DA served Plaintiff's attorney with notice that it intended to present the misdemeanor charges in the accusatory

instruments to a grand jury, which it ultimately did. *See id.* at ¶¶ 67-72. Based on these facts, the Court finds that Plaintiff has alleged the first element of a malicious prosecution claim, *i.e.*, that Defendant County commenced and continued a criminal proceeding against her.

The Court also finds that Plaintiff alleged that the criminal proceeding was terminated in her favor. This is because Plaintiff claims that, at the conclusion of the grand jury presentation, the grand jury refused to vote a true bill against her on the charges; and Plaintiff was discharged on December 19, 2017. *See id.* at ¶ 72.

With respect to the third element, "[i]t is the Plaintiff's burden to plausibly allege that there was no probable cause." *Sherman*, 2018 U.S. Dist. LEXIS 147154, at *10. "Probable cause to commence a criminal proceeding exists when the prosecuting officer has 'knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Id.* at *9 (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (quoting *Pandolfo v. U.A. Cable Sys. of Watertown*, 171 A.D.2d 1013, 1013, 568 N.Y.S.2d 981 (4th Dep't 1991))). "The existence of probable cause is measured as of the time the prosecution was initiated based on the facts that the prosecuting officer knew or reasonably believed to be true at that time." *Id.* (citing *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 151 (N.D.N.Y. 2006)).

Plaintiff claims in her complaint that the accusatory instruments failed to establish probable cause for her prosecution, which was further evidenced by the fact that the grand jury refused to issue a true bill of indictment against her. *See* Dkt. No 1 at ¶¶ 1, 64. Specifically, Plaintiff alleges that Defendant County did not have probable cause to prosecute her in that it did not have probable cause to search her property or arrest her. For example, Plaintiff alleges that Defendant DeLisle procured her "written consent" to search her farm on July 1, 2017, by

threatening to arrest her if she did not sign the form and by not permitting her to read it first. *See id.* at ¶ 29. Plaintiff further alleges that she tried to show Defendant DeLisle and the New York State Trooper the rescue horses' paperwork, but Defendant DeLisle "refused to look at them." *See id.* at ¶ 30. Additionally, when Defendant DeLisle asked Plaintiff about an elderly pony that he thought "looked thin," she informed him that the pony was very old, that she could not keep weight on him, but that she provided him with plenty of food and water, as well as a run-in barn for shelter in inclement weather; yet, this information was not included in Defendant DeLisle's sworn statement upon which the DA's office relied to obtain the search warrant. *See id.* at ¶ 31.

Relatedly, Plaintiff alleges that, upon information and belief, on or about July 3, 2017, a prosecutor working for Defendant County's DA's office applied to a Town Justice for a search warrant for Plaintiff's farm, relying in whole or in significant part upon Defendant DeLisle's sworn statement regarding his investigation and discussions with Plaintiff. *See id.* at ¶¶ 35-36. Plaintiff further alleges that Defendant County, through its prosecutors in the DA's office, made no effort to independently confirm the truthfulness, accuracy, or completeness of Defendant DeLisle's allegations. *See id.* at ¶ 38. The Court finds that these facts, if taken as true and construed in the light most favorable to Plaintiff, show that there was a lack of probable cause to search Plaintiff's property, arrest her, and commence criminal proceedings against her. Thus, the Court finds that Plaintiff adequately alleged this element of her malicious prosecution claims.

Fourth, the malice element "requires allegations that the defendant 'commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Sherman*, 2018 U.S. Dist. LEXIS 147154, at \*11 (quoting *Laboy v.*

*County of Ontario*, 668 F. App'x 391, 394 (2d Cir. 2016) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996))). "[A]n inference of malice sufficient to overcome a Rule 12(b)(6) motion can be inferred from a lack of probable cause." *Id.* (citing *Hilfiger v. Bradlees, Inc.*, No. 99-cv-4677, 2002 U.S. Dist. LEXIS 7191, *32-*33 (S.D.N.Y. Apr. 25, 2002) (finding that sufficient allegations of lack of probable cause allowed an inference of malice so as to overcome a motion to dismiss)); *see also Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) (holding that "[a] lack of probable cause generally creates an inference of malice" (citation omitted)). Thus, because Plaintiff has adequately alleged that there was no probable cause to commence a criminal proceeding against her, the Court further finds that that lack of probable cause creates an inference of malice sufficient to overcome Defendant County's motion to dismiss.

The Court therefore finds that Plaintiff has plausibly pled a common law claim for malicious prosecution against Defendant County. In addition, to allege a claim for malicious prosecution pursuant to 42 U.S.C. § 1983, Plaintiff must allege a seizure or other perversion of proper legal procedures that implicated her personal liberty in violation of the Fourth Amendment. *See Mitchell,* 841 F.3d at 79. Plaintiff was arrested on July 4, 2017. *See* Dkt. No. 1 at ¶ 46. An arrest without probable cause is an unreasonable seizure in violation of the Fourth Amendment. *See, e.g.*, *Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir. 2002). Because Plaintiff has alleged that she was arrested without probable cause, the Court finds that she has adequately alleged a claim for malicious prosecution pursuant to 42 U.S.C. § 1983.

## C. Defendant County's liability for Plaintiff's alleged malicious prosecution pursuant to 42 U.S.C. § 1983

The Court must next determine whether Plaintiff has alleged enough facts – taken as true and viewed in the light most favorable to her – to hold Defendant County liable for her malicious prosecution pursuant to 42 U.S.C. § 1983. In *Monell v. Dep't of Soc. Servs.*, the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

First, Plaintiff alleges that Defendant County had a policy or custom of delegating to Defendant "SPCA and its personnel the investigation of complaints, as well as the responsibility for determining whether a criminal prosecution of persons for acts of cruelty to animals should be commenced and continued." *See* Dkt. No. 1 at ¶ 84. Plaintiff also alleges that, in pursuit of that policy or custom, Defendant County accepted, without question, "the truthfulness, accuracy and completeness of representations made to its District Attorney and other prosecutors by [Defendant] SPCA and its personnel that such persons had actually committed acts of cruelty to animals," and Defendant County did not make an "effort to independently [ ] confirm that the conduct that [Defendant] SPCA and its personnel claimed violated New York State law actually took place or violate[d] any laws." *See id.* at ¶¶ 85-86.

In her complaint, Plaintiff alleges that, in furtherance of this policy or custom, Defendant County permitted Defendant SPCA and its personnel to submit affidavits in support of search warrant applications that were materially misleading. *See id.* at ¶ 87. Additionally, Plaintiff claims that Defendant County rejected information that criminal charges arising from its policy

or custom resulted in violations of civil rights for persons prosecuted for animal cruelty, and it made no effort to independently examine whether to dismiss those prosecutions. *See id.* at ¶ 88. The Court finds that these allegations are sufficient to assert an official custom, policy, or practice as *Monell* requires.

The second element of a *Monell* claim is that an official policymaker for the municipality made the custom, policy, or practice. Plaintiff alleges throughout her complaint that Defendant County, "through its chief policy-maker the District Attorney," implemented the alleged custom or policy. *See generally id.* at ¶¶ 20, 22, 23, 84, 85, 89. The parties dispute whether the District Attorney is a policymaker for municipal liability purposes.

The Second Circuit recently held, "if a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)). However, if a lawsuit "centers 'on the administration of the district attorney's office' – that is, on the 'office policy' that the district attorney sets – then the district attorney is 'considered a municipal policymaker,' and the Eleventh Amendment does not immunize him from suit." *Id.* (quoting *Ying Jing Gan*, 996 F.2d at 536).[3] "[T]he official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be 'responsible under state law for making policy *in that area* of the [municipality's] business.'" *Jeffes v. Barnes*, 208 F.3d 49, 57

---

[3] *See, e.g.*, *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992) (finding that the DA was an official of the municipality with respect to an office policy governing disclosure of exculpatory material and subornation of perjury), *cert. denied*, 507 U.S. 961 (1993); *Gentile v. Cnty. of Suffolk*, 926 F.2d 142, 152 n.5 (2d Cir. 1991) (holding that the DA was a municipal official under § 1983 regarding an office policy about disciplining law enforcement personnel).

- 13 -

(2d Cir. 2000) (quoting [*St. Louis v.*] *Praprotnik*, 485 U.S. [112,] 123, 108 S. Ct. 915 [(1988)] (emphasis added)) (other citations omitted).

Plaintiff alleges that there was an office policy, set by the District Attorney as the chief policymaker, that all investigation and prosecutorial discretion was delegated to Defendant SPCA for animal cruelty cases. *See generally* Dkt. No. 1 at ¶¶ 83-96. Thus, the Court finds that Plaintiff has sufficiently alleged that an official policymaker created the policy or custom at issue, as *Monell* requires.

Finally, Plaintiff alleges injury by showing that Defendant County's exercise of the foregoing policy or custom against her, which constituted malicious prosecution, deprived her of her liberty rights to be free of unlawful searches and seizures without due process, in violation of the Fourth and Fourteenth Amendments to the United States Constitution. *See id.* at ¶ 94. As a result of this custom or policy, Plaintiff also alleges that she suffered out-of-pocket expenses resulting from the criminal prosecution, loss of business, loss of future income and business opportunities, reputational harm, and emotional harm. *See id.* at ¶¶ 76-81. Based on these allegations, the Court finds that Plaintiff has plausibly alleged that she was injured as a result of the municipality's alleged policy or custom.

Therefore, for the above-stated reasons, the Court finds that Plaintiff has adequately stated a claim for municipal liability against Defendant County pursuant to 42 U.S.C. § 1983 and denies Defendant County's motion to dismiss this claim.

**D. Defendant County's liability for Plaintiff's alleged malicious prosecution pursuant to New York common law**

The final issue before the Court is whether Plaintiff has alleged that Defendant County is liable, under New York common law, for her allegedly malicious prosecution. New York

follows a different rule for municipal liability than the federal government. As the New York Court of Appeals explained,

> Municipalities long ago surrendered common-law tort immunity for the negligence of their employees. A distinction is drawn, however, between "discretionary" and "ministerial" governmental acts. A public employee's discretionary acts—meaning conduct involving the exercise of reasoned judgment—may not result in the municipality's liability even when the conduct is negligent. By contrast, ministerial acts—meaning conduct requiring adherence to a governing rule, with a compulsory result—may subject the municipal employer to liability for negligence.

*Lauer v. City of New York*, 95 N.Y.2d 95, 99 (2000) (citation omitted).

In *Kirchner v. Cnty. of Niagara*, the plaintiff brought a claim against the defendant-county and a defendant-assistant district attorney for malicious prosecution. *See generally Kirchner v. Cnty. of Niagara*, 107 A.D.3d 1620 (4th Dep't 2013). On appeal, the defendant-county argued that the plaintiff failed to state a cause of action against it for malicious prosecution because it was entitled to "absolute governmental immunity." *See id.* at 1624. The Fourth Department, in rejecting the defendant-county's argument, more fully explained New York's "governmental immunity," noting specifically that "[d]iscretionary acts 'involve the exercise of reasoned judgment which could typically produce different acceptable results[.]'" *Id.* at 1624-25 (quoting *Tango v. Tulevech*, 61 N.Y.2d 34, 41 (1983); (citing *Lauer v. City of New York*, 95 N.Y.2d 95, 99 (2000); *Haddock* [*v. City of New York*], 75 N.Y.2d [478,] 484 [(1990)]). Furthermore, if the employee's position is sufficiently discretionary, then the court must determine "'whether the conduct giving rise to the claim is related to an exercise of that discretion.'" *Id.* at 1625 (quotation omitted).

In *Kirchner*, the Fourth Department held that municipal employees, such as the defendant-assistant district attorney, functioned in a discretionary capacity, but her actions were not discretionary in that the plaintiff alleged that she coached a medical examiner to lie about

the evidence he found. *See id.* Because her actions did not involve "reasoned judgment," the court found that the defendant-county, as the defendant-assistant district attorney's employer, could be liable for her actions. *See id.*

Here, Plaintiff alleges that Defendant County's District Attorney created a policy whereby the investigation of animal cruelty cases and the ultimate decision whether to prosecute those cases were delegated to Defendant SPCA. However, Defendant County's DA had the *discretion* to create that policy. It wasn't mandated by law and it required the DA's reasoned judgment that, presumably, Defendant SPCA was in a better position to investigate those claims than was the DA's office. There is no evidence that the DA acted in bad faith, lied, or that his judgment was unreasonable. Plaintiff's prosecution is directly related to the DA's discretion to delegate animal cruelty investigations and the decision whether to prosecute those cases to Defendant SPCA. Thus, because the DA's discretionary conduct in delegating these tasks to Defendant SPCA gave rise to Plaintiff's prosecution, Defendant County cannot be held liable for Plaintiff's alleged malicious prosecution. Under New York law, it is "immune." Therefore, the Court grants Defendant County's motion to dismiss this claim.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant County's motion to dismiss Plaintiff's claims against it, *see* Dkt. No. 12, is **DENIED IN PART** and **GRANTED IN PART**; and the Court further

**ORDERS** that Defendant County's motion to dismiss Plaintiff's first cause of action for malicious prosecution based on a theory of municipal liability pursuant to 42 U.S.C. § 1983 is **DENIED**; and the Court further

**ORDERS** that Defendant County's motion to dismiss Plaintiff's second cause of action for common law malicious prosecution is **GRANTED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Hummel for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 20, 2020
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge